**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| GM GLOBAL TECHNOLOGY OPERATIONS LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>QUALITY COLLISION PARTS, INC.,<br><br>        Defendant.<br><br>QUALITY COLLISION PARTS, INC.,<br><br>        Counterclaim-Plaintiff,<br><br>   v.<br><br>GENERAL MOTORS COMPANY, INC, GENERAL MOTORS LLC, and GM GLOBAL TECHNOLOGY OPERATIONS LLC,<br><br>        Counterclaim-Defendants. | **Case No.: 1:25-mc-48**<br><br>**Honorable _____**<br><br>**Oral Argument Requested** |

## GM'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL FURTHER DEPOSITION OF TAFT, STETTINIUS, AND HOLLISTER

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................II

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................3

I.      Quality Collision Is The Subject Of An Ongoing Criminal Investigation By The Federal Government For Violation Of The Counterfeiting Laws ......................................3

II.     To Support Civil Claims Against General Motors, Quality Collision Claims That The Government Has Determined It Is Not A Counterfeiter, And That The Search And Seizure Conducted Against It Was Improper ...............................................................4

III.    Quality Collision Never Produced Communications With The Government, Forcing GM To Subpoena Its Criminal Attorneys At Taft..................................................6

IV.    Taft And Quality Collision Obstruct Any Meaningful Examination Of Taft's Witness.............................................................................................................7

LEGAL STANDARD.......................................................................................................9

ARGUMENT .................................................................................................................10

I.      Counsel's Instructions Not To Answer Questions Seeking Non-Privileged Testimony Based On Ethics Rule 1.6 Were A Clear Violation Of FRCP 30....................10

    A.    Under Rule 30, And Absent A Protective Order, Privilege Is The Only Basis To Instruct A Witness Not To Answer ...................................................10

    B.    Counsel's Constant, Repeated Instructions Not To Answer Questions On Non-Privilege Grounds Violated Rule 30(c)(2).......................................11

    C.    Ethics Rule 1.6 Does Not Supersede The Clear Requirement Of FRCP 30(c)(2) ......................................................................................16

II.     The Court Should Order Taft Or Quality Collision To Pay GM's Costs And Fees Associated With The Deposition And Order A New Deposition At Taft or Quality Collision' Expense ........................................................................................20

CONCLUSION..............................................................................................................22

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banner v. City of Flint*,
  99 F. App'x 29 (6th Cir. 2004) ................................................................................. 20

*Best Inn Midwest, LLC v. Underwriters at Lloyd's, London*,
  2023 WL 8702234 (S.D. Ind. Dec. 15, 2023) ............................................................ 9

*Espejo v. Santander Consumer USA, Inc.*,
  2014 WL 6704382 (N.D. Ill. Nov. 25, 2014) ........................................................... 13

*Gabet v. Amazon.com Inc.*,
  2024 WL 1624337 (S.D. Ind. Feb. 7, 2024) ............................................................. 21

*GM Global Technology Operations LLC v. Quality Collision Parts, Inc.*,
  Case No. 2:23-cv-13026 (E.D. Mich. Nov. 29, 2023) .......................................... 4, 5

*GM Global Technology Operations LLC v. Quality Collision Parts, Inc.*,
  2025 WL 1888798 (E.D. Mich. July 8, 2025) ............................................................ 7

*Halks v. Kindley Law Firm, APC*,
  2025 WL 1908317 (S.D. Cal. July 10, 2025) ........................................................... 20

*Henderson v. Zurn Industries, Inc.*,
  131 F.R.D. 560 (S.D. Ind. 1990) ............................................................................... 9

*Hope for Families & Community Serv., Inc. v. Warren*
  2009 WL 174970 (M.D. Ala. Jan. 26, 2009) ........................................................... 19

*Houston v. C.G. Sec. Servs., Inc.*,
  302 F.R.D. 268 (S.D. Ind. 2014) ............................................................................. 10

*In re Criminal Investigation No. 1/242Q*,
  602 A.2d 1220 (Md. 1992) ....................................................................................... 19

*In re Grand Jury Proceedings*,
  220 F.3d 568 (7th Cir. 2000) ................................................................................... 15

*In re Grand Jury Subpoena*,
  533 F.Supp.2d 602 (W.D. N.C. 2007) ..................................................................... 18

*In re Sulfuric Acid Antitrust Litig.*,
  235 F.R.D. 407 (N.D. Ill. 2006) .............................................................................. 14

ii

*In the Matter of the Search of 5523 E. 9 Mile Rd., Warren, MI,*
   Case No. 2:22-mc-51121 (E.D. Mich. July 1, 2022) ................................................. 3, 4

*Iverson v. J. David Tax Law, LLC,*
   2024 WL 4857172 (W.D. Wis. Nov. 21, 2024) ......................................................... 19

*Jackson v. Brinker,*
   147 F.R.D. 189 (S.D. Ind. 1993) .............................................................................. 9

*Knauf Insulation, LLC v. Johns Manville Corp.,*
   2019 WL 5208052 (S.D. Ind. Oct. 15, 2019) ........................................................... 16

*Moss v. Putnam Cnty. Hosp.,*
   860 F.Supp.2d 659 (S.D. Ind. 2011) ........................................................................ 17

*Quality Croutons, Inc. v. George Weston Bakeries, Inc.,*
   2006 WL 2375460 (N.D. Ill. Aug. 14, 2006) ........................................................... 13

*Redwood v. Dobson,*
   476 F.3d 462 (7th Cir. 2007) ............................................................................. 10, 11

*Resol. Tr. Corp. v. Dabney,*
   73 F.3d 262 (10th Cir. 1995) ................................................................................... 11

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC,*
   250 F. Supp. 3d 244 (W.D. Ky. 2017) ...................................................................... 11

*SEC v. Sassano,*
   274 F.R.D. 495 (S.D.N.Y. 2011) .............................................................................. 17

*Spina v. Forest Preserve of Cook County,*
   2001 WL 893842 (N.D. Ill. Aug. 7, 2001) ............................................................... 21

*Strickland v. City of Inglewood,*
   2009 WL 10672965 (C.D. Cal. April 23, 2009) ....................................................... 20

*Travelers Indemnity Co. of Am. v. Harris,*
   2021 WL 5396071 (S.D. Ill. Nov. 18, 2021) ............................................................ 21

*U.S. S.E.C. v. Hyatt,*
   621 F.3d 687 (7th Cir. 2010) ................................................................................... 17

*U.S. v. Evans,*
   113 F.3d 1457 (7th Cir. 1997) ................................................................................. 16

iii

*U.S. v. Nasser,*
   476 F.2d 1111 (7th Cir. 1973) .................................................................................. 13

*Wauchop v. Domino's Pizza,*
   143 F.R.D. 199 (N.D. Ind. 1992)............................................................................... 21

*Zino v. Whirlpool Corp.,*
   2012 WL 5197377 (N.D. Ohio Oct. 19, 2012).................................................... 18, 19

**Statutes**

Cal. Bus. & Prof. Code § 6068(e)................................................................................ 20

**Rules**

Fed. R. Civ. P. 26......................................................................................................... 9

Fed. R. Civ. P. 30............................................................................................... 2, 10, 11

Fed. R. Civ. P. 37....................................................................................................... 9, 21

Fed. R. Civ. P. 45................................................................................................. 9, 17, 18

Ind. R. Prof. Conduct 1.6 ........................................... 2, 8, 10, 16, 17, 18, 19, 20, 21

**INTRODUCTION**

Quality Collision sells aftermarket automotive parts such as bumpers and grilles designed to replace a vehicle's OEM part.  In July 2022, pursuant to a court-ordered search and seizure warrant, the federal government conducted a search of Quality Collision's warehouses and other facilities, seizing large quantities of products deemed to be counterfeit and patent-infringing.  At the government's request, representatives from numerous OEM auto-companies, including Ford, FCA, General Motors ("GM"), and others, provided assistance during the criminal investigation and search.

Although the government's warrant sought patent-infringing parts, and although the government did in fact seize many parts infringing the patents of OEMs like GM, the government later determined it did not have the authority to retain patent-infringing-only parts and returned those to Quality Collision.  It retained, and still possesses, Quality Collision parts deemed to be counterfeit.  To this day, that criminal investigation is ongoing.

Given the government's return to Quality Collision of parts that GM had identified as patent-infringing, GM filed a civil suit against Quality Collision with ten counts of patent infringement.  Quality Collision, represented by the law firm Howard & Howard, responded with a counterclaim against GM, asserting that GM made false statements to the government, and claiming that GM is liable for harm to Quality Collision arising out of the government's search and seizure.  Quality Collision asserts that it was false for GM to assert that any of Quality Collision's parts were counterfeit.

The law firm of Taft, Stettinius, and Hollister ("Taft"), led by attorney Jason Covert, represents Quality Collision in the ongoing criminal investigation against Quality Collision, as well as in a separate forfeiture action seeking the return of funds seized by the government.

1

As part of its defense to the counterclaims in the civil matter, GM subpoenaed Taft, seeking documents and testimony concerning Taft's non-privileged communications with the government in relation to the criminal and forfeiture matters. This evidence is highly relevant to Quality Collision's claims against GM, and necessary to refute Quality Collision's assertions regarding the government's investigation and conduct.

In response to the subpoena, Taft produced over 1,600 pages of responsive emails and documents bearing on issues central to Quality Collision's claim. Despite this, when GM deposed Jason Covert, his counsel refused to allow him to answer nearly every question concerning the documents Taft produced under the subpoena. Counsel also blocked answers to even the most basic information about the representation, and about Mr. Covert's interactions with the government.

Taft's counsel sought to justify the obstruction by relying on Indiana and/or Michigan Rule of Professional Conduct 1.6. Counsel argued that it could block answers even to admittedly and facially non-privileged questioning, asserting that Rule 1.6's broader "confidentiality" umbrella prevented Taft from allowing answers. But this directly violates Federal Rule of Civil Procedure 30(c)(2), which states that the "only" basis for an instruction not to answer is to preserve a privilege, to enforce a court-ordered limitation, or to present a motion under Rule 30(d)(3), none of which apply.

GM seeks an order compelling compliance with the subpoena and requiring Jason Covert to sit for a re-deposition and to answer questions regarding the subject matter on which he improperly was told to refuse. GM also seeks its costs and fees associated with having to re-depose Mr. Covert.

2

## BACKGROUND

I.     **Quality Collision Is The Subject Of An Ongoing Criminal Investigation By The Federal Government For Violation Of The Counterfeiting Laws**

Quality Collision sells aftermarket auto parts intended to replace original OEM vehicle parts.  Quality Collision does not design or manufacture parts; they purchase already-made copy parts from a Chinese supplier.  In 2019, federal customs officials seized multiple imported shipments of what it determined to be counterfeit parts.  Over the next several years, the federal government continued its investigation against Quality Collision.  The investigation culminated in July 2022, when the federal government sought and obtained a warrant to search Quality Collision's business operations and to seize evidence of criminal counterfeiting.  *In the Matter of the Search of 5523 E. 9 Mile Rd., Warren, MI*, Case No. 2:22-mc-51121, ECF No. 1 (E.D. Mich. July 1, 2022) ("*Warrant Case*").  Among other things, the warrant application described the multiple instances of Quality Collision having products seized at the border for counterfeiting.  *Id.* at PageID.5-11.  It also included information provided by multiple OEM auto companies—General Motors, Ford, and FCA—each of whom provided statements to the government investigator, noting that they had made test purchases of Quality Collision parts, that those parts were not authorized parts, and that they infringed on the OEMs' respective intellectual property rights including trademark rights.  *Id.* at PageID.13-20.

During the course of the search, the government obtained additional warrants to search additional Quality Collision properties.  *E.g.*, *Warrant Case*, ECF No. 11.  In support of the additional warrants, the government stated that "a large percentage of the parts that have been inspected" at the original search locations "appear to be counterfeit or patent infringing."  *Id.* at PageID.311 (¶ 13).

Although it has yet to indict Quality Collision, the government's criminal investigation is

3

ongoing, and it retains thousands of parts that it deems to be counterfeit.  It also seized cash from Quality Collision and is actively opposing Quality Collision's attempt to return that cash.

Taft, led by attorney Jason Covert, represents Quality Collision in association with the criminal investigation and a separate forfeiture proceeding involving the seized cash.

**II.     To Support Civil Claims Against General Motors, Quality Collision Claims That The Government Has Determined It Is Not A Counterfeiter, And That The Search And Seizure Conducted Against It Was Improper**

During the search of Quality Collision, the government specifically sought and ultimately seized patent-infringing products in addition to counterfeit products.  *Warrant Case*, ECF No. 1, PageID.29 (including as the items to be seized "[a]ny and all counterfeit, trademark infringing, or patent infringing merchandise, specifically counterfeit and patent infringing auto parts").  Counterfeiting implicates trademark infringement but not patent infringement.  Although the government seized large quantities of parts deemed to be patent-infringing during its search of Quality Collision, it subsequently determined that it did not have jurisdiction over the patent-infringing products, and returned those to Quality Collision.  The government retained, and still possesses, a large quantity of parts that it deems counterfeit, including copy parts intended for GM vehicles.

In November 2023, GM filed suit against Quality Collision for large-scale infringement of ten of its design patents.  *GM Global Tech. Operations LLC v. Quality Collision Parts, Inc.,* Case No. 2:23-cv-13026, ECF No. 1 (E.D. Mich. Nov. 29, 2023) [hereinafter, "*GM Global v. Quality Collision*"].

Quality Collision responded with counterclaims, alleging that GM made false statements to the government during its investigation, wrongly inducing the government to conduct the search and seizure.  *Id.*, at ECF No. 19, ¶ 11 ("[O]n information and belief, ***GM improperly influenced***

4

the [federal government] to conduct a raid on Quality Collision's warehouses…."). [1]  Quality Collision also alleges that GM (not the government) was responsible for the seizure of parts, that GM directed the government what to seize, and that GM used the search to conduct its own separate investigation of Quality Collision business records, among other outlandish allegations. *Id.*, at ¶¶ 11-16, 21, 32-45, 57, and 58.

Throughout the litigation, Quality Collision has made numerous statements to the Court about the ongoing criminal investigation against it, including:

- "In the end, the government did not seize any parts that are counterfeits of any GM parts." *GM Global v. Quality Collision*, ECF No. 111-2, PageID.3458 (response to GM's Interrogatory No. 7).

- "More than a year after the raid, the U.S. Attorney admitted that the Government seized more parts than it should have." *Id.* at ECF No. 60, PageID.1325 (Response to Motion to Compel and For Sanctions for Failing to Appear at Depositions).

- "… GM improperly caused a government criminal raid on Quality Collision's business, and seizure of inventory, cash, business equipment, business records and other things. All of this was done ostensibly to prevent the sale of counterfeit parts.  But there were no counterfeit GM parts; and GM caused the raid in order to harm an aftermarket competitor, hopefully putting it out of business, and unlawfully seek evidence for its design patent infringement claims."  *Id.* at ECF No. 45, PageID.858 (Quality Collision's First Motion to Compel (mostly denied by Court).

- "GM conducted a years-long campaign against Quality Collision – including a massive raid on Quality Collision's business, and that campaign resulted in no criminal charges." *Id.* at ECF No. 26, PageID.432 (Quality Collision Response to Motion to Dismiss).

Accordingly, as the allegations and statements quoted above show, the government's position, what it has communicated to Quality Collision, and Quality Collision's understanding of that information, is centrally relevant and highly important to GM's defense against Quality Collision's claims.

---

[1] All emphasis is added, unless otherwise noted.

**III.    Quality Collision Never Produced Communications With The Government, Forcing GM To Subpoena Its Criminal Attorneys At Taft**

Discovery has been open for ten months, yet during that time, Quality Collision has refused to make a single witness available for deposition, and still has not.  Quality Collision also failed to collect and produce communications with the federal government concerning the ongoing criminal investigation, despite the fact that it is affirmatively making statements to the Court about the government's positions (as quoted above).

Because of Quality Collision's discovery failures, GM subpoenaed Taft and Quality Collision's other attorneys representing it in ongoing matter with the government.  Declaration of Dennis J. Abdelnour ("Abdelnour Decl."), Ex. A.  The subpoena is narrowly drawn—with only three document requests and three deposition topics—seeking non-privileged information regarding the government's investigation:

**Document Requests**

1. All non-privileged documents and communications concerning the U.S. Government's investigation of Quality Collision in the matter *United States v. Quality Collision.*

2. All documents exchanged between You and any agency of the U.S. Government, including the U.S. Department of Justice, U.S. Department of Homeland Security, and U.S. Customs and Border Protection, concerning Quality Collision.

3. All communications between You and any agency of the U.S. Government, including the U.S. Department of Justice, U.S. Department of Homeland Security, and U.S. Customs and Border Protection, concerning Quality Collision.

**Deposition Topics:**

1. The U.S. Government's investigation of Quality Collision.

2. Documents responsive to this subpoena.

3. Communications with the U.S. Government, including the U.S. Department of Justice, U.S. Department of Homeland Security, and U.S. Customs and Border Protection, concerning Quality Collision.

*Id.* at 7-8.

6

Taft produced 1,655 pages of documents and emails exchanged between its partner Jason Covert (who represents Quality Collision) and government officials involved in the criminal investigation of Quality Collison, including Assistant U.S. Attorney Timothy Wyse, who leads the investigation into Quality Collision. Quality Collision never produced a single one of these emails.

The emails provided reveal statements made by government officials to Quality Collision that flatly contradict allegations and statements made regarding the government search, and GM's involvement. For example, in an email to Quality Collision's attorneys (including Mr. Covert), AUSA Wyse stated:

> Perhaps most importantly, I need you—and your client—to understand that GM did not initiate this investigation. As I've explained to every counsel to represent your client, the investigation stemmed from repeated import violations identified by CBP. It was referred to our office by HSI, opened by a predecessor of mine, and then overseen by me (later joined by CCIPS). GM—as did other OEMs— provided information upon the government's request and helped identify infringing parts. But neither GM nor any other OEM made any relevant decisions concerning the course of the investigation.

*GM Global Tech. Operations LLC v. Quality Collision Parts, Inc.,* 2025 WL 1888798, at *5 (E.D. Mich. July 8, 2025).

## IV.    Taft And Quality Collision Obstruct Any Meaningful Examination Of Taft's Witness

Taft designated Mr. Covert as its witness for deposition, which occurred on August 21, 2025. Leading up to the deposition, Quality Collision's lead attorney in the civil matter against GM, Andrew Grove of Howard & Howard, sent several emails to GM's counsel demanding that GM withdraw its request to depose Mr. Covert, threatening that it would be a "waste of time and money." Abdelnour Decl., Exs. B, C. In an email dated July 16, 2025, Mr. Grove stated:

> We think this is a waste of time and money, and it is likely to be a waste of the court's time, too, if it has to babysit and rule on the many likely objections as to work product and privilege – and potentially relevance and proportionality.

Abdelnour Decl., Ex. C.

The day before the deposition, Mr. Grove emailed again, this time threatening that Quality Collision would "object" to questions on confidentiality grounds beyond what is covered by privilege: "we anticipate objecting to many questions based on attorney-client confidentiality and Rule of Professional Conduct 1.6, which is broader in that it encompasses more than privileged communications." Abdelnour Decl., Ex. B. GM responded that Rule 30 only allows an instruction not to answer on privilege grounds, not on broader concepts of "confidentiality." *Id.* Neither Taft nor Howard & Howard responded before the deposition began.

At the deposition, Mr. Covert's attorney, Ms. Cari Sheehan of Taft, joined by Mr. Grove (collectively "Counsel"), repeatedly instructed Mr. Covert not to answer questions, stating "Objection. Attorney-client privilege, confidentiality pursuant to Rules 1.6 in Michigan and Indiana, and work product. And I would instruct him not to answer." *See e.g.*, Abdelnour Decl., Ex. D, at 10:22-25. But, as set forth below, despite the reference to privilege grounds, the record clearly indicates that the large majority of instructions not to answer—if not every instruction not to answer—was based solely on "confidentiality" and not on privilege.

For example, Counsel repeatedly instructed Mr. Covert not to answer questions concerning basic information, like whether he authored an email to the government, whether Quality Collision was being investigated by the government, and even if jcovert@taftlaw.com was his email address. *See* Abdelnour Decl., Ex. D, at 7:3, 19:13-15, 35:8-10, 39:25-40:1, 104:13-14, 105:11-12, and 106:6-7.

At several points, Counsel admitted that these questions did not seek privileged information, and that the objection was grounded solely in confidentiality under Rule 1.6. *See id.*, at 7 (instructing Mr. Covert not to answer whether he was familiar with the lawsuit between GM and Quality Collision based on confidentiality).

This rendered the entire deposition largely a "waste of time and money" as Quality Collision's attorney threatened.  Indeed, Counsel refused to allow answers on any questions regarding the non-privileged emails that Taft produced in response to GM's subpoena.  *Id.* at 20-21. Counsel made clear on the record that she would not allow answers absent GM obtaining "a court order," stating: "[y]ou get a court order, he will testify." *Id.* at 21:6.

On August 27, 2025, counsel for GM, Taft, and Quality Collision conferred regarding the further deposition of Jason Covert, but no resolution was reached.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 permits the issuance of subpoenas to produce documents in the custody or control of a person and to command persons to attend depositions.  Fed. R. Civ. P. 45(a).  "The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Jackson v. Brinker*, 147 F.R.D. 189, 193-94 (S.D. Ind. 1993) (citing Fed. R. Civ. P. 45).  Therefore, the scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

Rule 37 allows for a party to "move for an order compelling disclosure or discovery," including to compel a deponent to answer a question.  Fed. R. Civ. P. 37(a)(1), (a)(3)(B).  "A motion for an order to a nonparty must be made in the court where the discovery is or will be taken." *Id.* at 37(a)(2).

Rule 30 governs the conduct of depositions, even when those depositions are conducted pursuant to a Rule 45 subpoena. *Best Inn Midwest, LLC v. Underwriters at Lloyd's, London*, 2023 WL 8702234, at *2 (S.D. Ind. Dec. 15, 2023); *Henderson v. Zurn Industries, Inc.,* 131 F.R.D. 560, 565 (S.D. Ind. 1990).

## ARGUMENT

**I.    Counsel's Instructions Not To Answer Questions Seeking Non-Privileged Testimony Based On Ethics Rule 1.6 Were A Clear Violation Of FRCP 30**

    **A.    Under Rule 30, And Absent A Protective Order, Privilege Is The Only Basis To Instruct A Witness Not To Answer**

Rule 30(c)(2) states:

> A person may instruct a deponent not to answer ***only when necessary to preserve a privilege***, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2).  Here, counsel defending Jason Covert did not obtain, and is not relying on any "limitation ordered by the court," and Rule 30(d)(3), which involves annoyance, embarrassment, and oppression, was not the basis for any objection and is inapplicable.  Thus, by its own terms, the only permissible basis for an instruction not to answer a question is "to preserve a privilege."  Rule 30 does not allow an attorney to prevent testimony over non-privileged subject matter based on an ethics rule or confidentiality.  Rather, any such "objection…must be noted on the record, but the examination still proceeds."  *Id.*

Courts in the Seventh Circuit and around the country universally recognize that instructions not to answer for reasons not enumerated in Rule 30(c) are "improper" and "frustrate[] a fair examination" of the witness.  *Houston v. C.G. Sec. Servs., Inc.*, 302 F.R.D. 268, 278 (S.D. Ind. 2014) (stating that defending "counsel did not permit [the witness] to answer all the questions asked of him, determining that they were outside the scope of the deposition or immaterial to the merits of the case" and that "a deponent may not be instructed to refuse to answer a question except when necessary to preserve a privilege, enforce a limitation on testimony that the court has ordered, or to present a motion for a protective order"); *Redwood v. Dobson*, 476 F.3d 462, 469 (7th Cir. 2007) (finding "instructions not to respond that neither shielded a privilege nor supplied time to apply for a protective order" "were unprofessional and violated the Federal Rules of Civil

10

Procedure"); *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 250 F. Supp. 3d 244, 267 (W.D. Ky. 2017) ("[Defending] counsel's instruction to [the witness] was not based on any of the grounds listed in Rule 30(c)(2).  Rather, it seems apparent that … counsel instructed [the witness] not to answer the questions … because he thought the information sought was irrelevant.  The Court agrees with SCA that this conduct was inappropriate."); *Resol. Tr. Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("Under the plain language of Fed. R. Civ. P. 30(d)(1), counsel may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to suspend a deposition in order to present a motion under Fed. R. Civ. P. 30(d)(3).").

Along those lines, as Rule 30(c)(2) contemplates, if a party seeks to prevent testimony on non-privileged subject matter, "the proper procedure [is] to apply to the court for a pre-deposition protective order, as called for by the rules of civil procedure."  *Resol. Tr. Corp.*, 73 F.3d at 266; *Redwood v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007) (sanctioning an attorney for instructing a witness not to answer without applying for a protective order).

**B.**  **Counsel's Constant, Repeated Instructions Not To Answer Questions On Non-Privilege Grounds Violated Rule 30(c)(2)**

Here, Counsel's repeated instruction to the witness not to answer questions was a clear violation of the Federal Rules of Civil Procedure.  Again, as mentioned above, counsel never sought for or obtained "a pre-deposition protective order, as called for by the rules of civil procedure."  *Resol. Tr. Corp.*, 73 F.3d at 266; *Redwood v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007).    Moreover, Counsel's objections were not based on harassment, annoyance, or embarrassment, and thus Rule 30(d)(3) is inapplicable.

More fundamentally, there is no dispute, nor can there be, that the testimony sought did not implicate a privilege, and as the party relying on the privilege, neither Taft nor Quality

11

Collision can bear their burden of establishing it.  This is true for myriad reasons:

*First*, counsel admitted on the record that the objections were not based on privilege, but rather on a "broader" concept of "confidentiality" under the ethics rules.  The following exchange, among many others, makes clear that instructions not to answer were not grounded in privilege:

> MR.  ABDELNOUR: Okay. So, look, we've looked at this.  Mr. Grove raised this yesterday.  1.6 does not provide a broader basis to object than the attorney-client privilege and attorney work product, so I want to be clear, ***are you instructing him not to answer based on 1.6 even though those communications are not privileged***?
>
> MS.  SHEEHAN: ***Yes***.

Abdelnour Decl., Ex. D, at 13:15-22.

> Q. You and the law firm of Taft represent Quality Collision Parts; is that true?
>
> MS.  SHEEHAN: Objection to confidentiality, and even the name of a client is confidential even if it's part of a public record.  Read the rule.  Instruct him not to answer.
>
> Q.  Are you going to follow that instruction?
>
> A. Yes.
>
> MR.  ABDELNOUR: Are you claiming that whether or not he represents Quality Collision is privileged?
>
> ….
>
> MR.  GROVE: It's confidential, confidential.
>
> MR.  ABDELNOUR:· Well, I want to -- I just want to be clear.  I know you're saying it's confidential –
>
> MS.  SHEEHAN: It is confidential.
>
> MR.  ABDELNOUR: -- ***but is it also privileged***?
>
> MS.  SHEEHAN: ***No, it's just confidential***.

*Id.*, at 17:13-18:10; *see also id.*, at 23:1-8 ("I would agree that maybe it's not attorney-client privilege, but it is covered by confidentiality, and so I'm instructing him not to answer."); *id.* at

12

13:5-14 ("MR. ABDELNOUR: … His discussions with a different law firm representing the same client do not make those discussions privileged. MS. SHEEHAN: *They make them confidential*, *which is 1.6, which is broader than attorney-client privilege*. And he's still instructed not to answer."); *id.*at 68:17-69:1 ("MS. SHEEHAN: I instruct him not to answer . . . MR ABDELNOUR: I just want you to agree with me that this is not attorney-client privilege because it's a conversation with a government employee; right? MS. SHEEHAN: It is not attorney-client privilege necessarily. It is confidential under Rule 1.6.").

*Second*, the entire subject matter of the deposition concerned facially non-privileged information concerning Jason Covert's discussions with federal government officials concerning the ongoing criminal investigation into Quality Collision and the status of parts seized from Quality Collision. Indeed, the subpoena was carefully crafted to elicit documents and testimony concerning only these non-privileged discussions with outside officials. Abdelnour Decl. Ex. A at 7-8 (seeking "non-privileged documents and communications" and identifying as a deposition topic "communications with the U.S. Government").

It is well established that "[a] conversation involving a client's lawyer and a third party plainly is not privileged." *Espejo v. Santander Consumer USA, Inc.*, 2014 WL 6704382, at *2 (N.D. Ill. Nov. 25, 2014) (holding that conversations between a deputy general counsel and the government were not privileged); *see also U.S. v. Nasser*, 476 F.2d 1111, 1125 (7th Cir. 1973) (holding that a conversation between witness, the witness's attorney, and the government were not privileged); *Quality Croutons, Inc. v. George Weston Bakeries, Inc.*, 2006 WL 2375460, at *2 (N.D. Ill. Aug. 14, 2006) (compelling the deposition of counsel and finding that communications between counsel and the adverse party "clearly are not privileged").

To that end, Taft produced over 1,600 pages of emails and documents exchanged between

13

Jason Covert and government officials, and large portions of the deposition sought testimony concerning these documents. Taft did not assert privilege over any of these produced documents, and even if it believed there was a privilege, any such privilege is waived. *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 427 (N.D. Ill. 2006) (holding that producing documents pursuant to a subpoena waives any claim of privilege).

By way of example, the following question is representative of the type that counsel instructed the witness not to answer concerning communications with the government:

> Q. Has anybody from the government ever conveyed to you that General Motors made false or misleading statements in association with its investigation into Quality Collision Parts?
>
> MS. SHEEHAN: Objection. Attorney-client privilege and/or confidentiality under Michigan and Indiana Rules 1.6. **I instruct him not to answer.**
>
> MR. GROVE: Second the objection.
>
> Q. Will you answer?
>
> A. No, sir.
>
> Q. … Isn't it true that the government's criminal investigation into Quality Collision is ongoing?
>
> MS. SHEEHAN: Objection. Attorney-client privilege and/or confidentiality under Michigan, Indiana Rules 1.6. **I instruct him not to answer.**

Abdelnour Decl., Ex. D, at 41:21-42:12.

Counsel admitted that communications with the government were not privileged:

> MR. ABDELNOUR: You agree with me, Counsel, that this email I'm looking at is not a privileged email. *It's an email with a third party, the government; correct?*
>
> MS. SHEEHAN: *I would agree that maybe it's not attorney-client privilege, but it is covered by confidentiality, and so I'm instructing him not to answer.*

*Id.* at 23:1-8.

Notably, although Counsel's objection above (and elsewhere in the transcript) refers to "attorney-client privilege" it is coupled with "and/or confidentiality."  Despite passing reference to privilege, questions like the ones cited above are plainly not "attorney-client privilege" because they seek testimony concerning communications not with the client, but with an adverse party.  In any event, Taft and Quality Collision cannot establish the privilege, despite their burden.  *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) ("[T]he party seeking to establish the privilege, bears the burden of demonstrating that all of the requirements for invoking the attorney-client privilege have been met.").

Here, instructions not to answer were lodged throughout the entire deposition, obstructing answers on even the most basic questions.  The witness was instructed not to answer, for example, the following questions:

- "Are you familiar with the lawsuit between General Motors and Quality Collision Parts?" Abdelnour Decl. Ex. D, at 7:3-13.

- "You have communicated directly with government officials regarding your representation of Quality Collision; isn't that true?"  *Id.* at 19:13-15.

- "Quality Collision is involved in a criminal investigation concerning counterfeiting; correct?"  *Id.* at 18:24-19:12.

- "What is the forfeiture matter?"  *Id.* at 23:30.

- "What is the asset return matter?"  *Id.* at 24:20.

- "In the -- in the CC line of the email is your email address, jcovert@taftlaw.com; correct?" *Id.* at 39:25-40:1.

- "This is a case in which you have made an appearance and filed documents; correct?" *Id.* at 58:15-16.

- "Can you confirm that you wrote that email?"  *Id.* at 105:11-12.

- "Why was the government returning parts to Quality Collision?"  *Id.* at 113:2-9.

**Third**, and along the same lines, Counsel instructed the witness not to answer even the

15

most basic questions about *publicly filed documents*, which are likewise facially not privileged.

But of course, "facts are not privileged." *See Knauf Insulation, LLC v. Johns Manville Corp.*, 2019

WL 5208052, at *3 (S.D. Ind. Oct. 15, 2019). This includes questions about documents Mr. Covert

filed publicly, which he did not answer. *See* Abdelnour Decl., Ex. D, at 43:25-44-12 (refusing to

answer based on Counsel's instruction, "And this is a motion that you prepared and filed with the

U.S. District Court for the Eastern District of Michigan; correct?").

     ***Fourth***, where counsel did object on "privilege" grounds, it was clearly improper. For

example, Jason Covert admitted to speaking with lawyers from Howard & Howard concerning his

deposition, but he was nonetheless instructed not to disclose the content of that discussion:

> MR. ABDELNOUR: Well, we certainly disagree that if he had discussions with Howard & Howard that it's covered by a privilege. He's not represented by Howard & Howard.
>
> MS. SHEEHAN: No, but they have the same client.
>
> MR. ABDELNOUR: That doesn't make his discussions with them privileged. His discussions with the client may be privileged, granted. His discussions with a different law firm representing the same client do not make those discussions privileged.

*Id*. at 12-13 (cleaned up). As noted on the record, discussions with Howard & Howard lawyers

are not privileged because Jason Covert admitted that Howard & Howard does not represent him.

*U.S. v. Evans*, 113 F.3d 1457, 1463 (7th Cir. 1997) (holding that the presence of a third party, who

was a lawyer, defeated the attorney-client privilege, stating "the attorney must have been engaged

or consulted by the client for the purpose of obtaining legal services").

     **C.**     **Ethics Rule 1.6 Does Not Supersede The Clear Requirement Of FRCP 30(c)(2)**

     Counsel took the position that the ethics rules prevented Mr. Covert from testifying under

Indiana and Michigan Rules of Professional Conduct 1.6. But these rules do not supersede or

otherwise overcome Rule 30. Indeed, the ethics rules are perfectly consistent with Rule 30.

Focusing on Indiana, Rule 1.6[2] provides in relevant part:

(a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).

(b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary:

…

(6) to comply with other law or a court order.

Thus, the ethics rules have an explicit exception that allows confidential information to be revealed to comply with court-sanctioned discovery, as is the case here.

Here, the Rule 45 subpoena served on Taft is a "court order" for purposes of Rule 1.6. *See U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 693 (7th Cir. 2010) ("Accordingly, we reject BCI's argument that a subpoena issued under Rule 45(a)(3) by an attorney as an officer of the court is not itself a court order subject to contempt sanctions if disobeyed."); *see also Moss v. Putnam Cnty. Hosp.*, 860 F.Supp.2d 659, 661 (S.D. Ind. 2011) ("The Seventh Circuit recently reaffirmed that a subpoena *duces tecum* served by an attorney is an 'order of the court.'").

In fact, courts around the country have compelled compliance with a subpoena over Rule 1.6 objections. *SEC v. Sassano*, 274 F.R.D. 495, 497 (S.D.N.Y. 2011). In *Sassano*, for example, the court stated, "[Rule 1.6] contains an exception, however: an attorney may reveal confidential client information 'to comply with ... law or court order.'" *Id.* (citing Rule 1.6(b)(6)). The Court further stated, "Fed. R. Civ. P. 45 constitutes a 'law' that requires [the attorney] to reveal the allegedly confidential client information sought here absent a valid basis for objection, such as privilege." *Id.*; *see also In re Grand Jury Subpoena,* 533 F.Supp.2d 602, 605-06 (W.D. N.C. 2007)

---

[2] Both Michigan and Indiana's rule 1.6 are in all material respects similar, and both are derived from the ABA's Model Rule of Professional Conduct 1.6.

(ordering compliance with a grand jury subpoena over Rule 1.6 objections, stating "[s]hort of a federally recognized privilege, compliance with a grand jury subpoena is *the law* in the United States, thus trumping confidentiality obligations under Rule 1.6").

Further, Comment [3] to Indiana Rule of Professional Conduct 1.6 makes clear that in the context of providing evidence in a court proceeding, Rule 1.6 extends only to the privilege doctrines, and that broader concepts of confidentiality that do not implicate privilege are inapplicable:

> The principle of client-lawyer confidentiality is given effect by related bodies of law: the attorney-client privilege, the work product doctrine and the rule of confidentiality established in professional ethics. **The attorney-client privilege and work product doctrine apply in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client.** The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source.

This description coincides with Rule 30's requirement that instructions not to answer be limited to privilege grounds. And it explains that the concept of "confidentiality" that extends beyond privilege only "applies in situations *other than those where evidence is sought from the lawyer through compulsion of law*." *Id.*

Indeed, courts in this Circuit and the Sixth Circuit find that other rules of professional conduct, likewise modeled off the American Bar Association ("ABA") model rules, are not a basis to resist discovery beyond the privilege doctrines. For example, citing Comment 3, the Northern District of Ohio commanded an attorney, through subpoena, to testify at a deposition. *Zino v. Whirlpool Corp.*, 2012 WL 5197377, at *5 (N.D. Ohio Oct. 19, 2012). The Court stated, "[i]t is the ruling of this court that [the attorney] shall testify to relevant matters not otherwise protected by attorney-client privilege or the work-product doctrine . . . Such testimony will not run afoul of

18

his ethical obligations under the Ohio Rules of Professional Conduct." *Id.* (citing Comment [3] to Ohio Prof. Rule 1.6). Likewise, the Western District of Wisconsin found that Rule 1.6 did not bar discovery from an attorney because Rule 1.6 "is a rule of lawyer ethics, not a rule of civil procedure" and therefore is "inapplicable to this discovery dispute." *Iverson v. J. David Tax Law, LLC,* 2024 WL 4857172, at *3 (W.D. Wis. Nov. 21, 2024).

Other courts have similarly held that Rule 1.6 is not a broader basis to resist discovery than the privilege doctrines. In *Hope for Families & Cmty. Serv., Inc. v. Warren*, the Court compelled discovery, holding that Rule 1.6 is not a basis outside of the privilege doctrines to refuse discovery. 2009 WL 174970, at *32-33 (M.D. Ala. Jan. 26, 2009). In that case, the Court distinguished various ethics opinions because "information which they now seek from the lawyers .... is a question *more properly determined by the trial court as a matter of law, rather than as an issue concerning ethics.*" *Id* (emphasis in original). And Maryland's highest court held, "[w]e do not agree with the trial judge that [Rule 1.6 was] intended to expand the attorney-client privilege." *In re Criminal Investigation No. 1/242Q*, 602 A.2d 1220, 1221 (Md. 1992). Therefore, "disclosure in the instant case is governed by the attorney-client privilege rather than the Rules of Professional Conduct." *Id*. at 1222.

Notably, if Taft's true concern is confidentiality, there is a protective order in place in this litigation that can be used to protect such information from disclosure or use outside of this case. *See* Abdelnour Decl., Ex. A; ECF No. 37. Indeed, Taft produced documents designated as confidential and "attorneys' eyes only" under the protective order. And the protective order allows Taft to designate a deposition transcript in the same manner. ECF No. 37, PageID.651.

After the deposition, and during the meet-and-confer process, Counsel identified two cases on which they rely, but neither supports them. The first is *Strickland v. City of Inglewood*, which

19

concerns California's rules of ethics.  2009 WL 10672965, at *2 (C.D. Cal. April 23, 2009).  But this case is inapposite because California is the one state that does not follow the ABA's Model Rules of Professional Conduct.  *Halks v. Kindley Law Firm, APC*, 2025 WL 1908317, at *1 n.2 (S.D. Cal. July 10, 2025) ("All states other than California have adopted rules of professional conduct based upon the American Bar Association ("ABA") Model Rules of Professional Conduct").  Importantly, California's rule concerning client confidentiality does not contain an exception for compliance with "court orders" like the Indiana rule and the ABA model rule.  *Compare* Cal. Bus. & Prof. Code § 6068(e), *with* Ind. R. Prof. Conduct 1.6.  Thus, any reliance on this case is misplaced.   *Strickland* is also factually distinguishable because the questions that elicited the instruction not to answer were clearly seeking privileged information between a former city attorney and the attorney's client (a city official) regarding "legal issues" involving the city.  *Strickland*, 2009 WL 10672965, at *1 n.1, *3.

Counsel also relies on *Banner v. City of Flint*, 99 F. App'x 29 (6th Cir. 2004), but this case bears no relationship to the issues at hand.  In *Banner*, an attorney was found to have violated client confidentiality by using confidential information learned during a consultation in a deposition of that potential client for the benefit of the case of another client of the attorney.  *Id.* at *32, *36.  *Banner* does not involve instructions not to answer under Rule 30, or whether reliance on Rule 1.6 is a basis to prevent testimony.

**II.     The Court Should Order Taft Or Quality Collision To Pay GM's Costs And Fees Associated With The Deposition And Order A New Deposition At Taft or Quality Collision' Expense**

If the Court grants GM's motion, pursuant to Rule 37(a)(5), the Court should also award GM its reasonable expenses for making the motion.  Rule 37 provides:

> If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or

attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5).

Here, an award of costs and fees is appropriate because the conduct at the deposition prevented any meaningful examination of the witness in violation of Rule 30. And even though Counsel identified Rule 1.6 in correspondence prior to the deposition, it was not until the deposition began that Counsel made it clear that they would refuse all testimony on questions involving clearly non-privileged information. Counsel insisted it would not comply with the subpoena absent GM securing a "court order," but counsel failed to even seek a pre-deposition protective order, as the Federal Rules of Civil Procedure clearly require. Even if Counsel's objections were not meritless (they are), Counsel's failure to follow the procedure for obtaining relief resulted in GM incurring unnecessary costs and fees. The mere fact that GM will need to conduct a complete re-do of the deposition proves this.

This Court has awarded fees under similar and less-egregious situations. For example, it ordered fees where a party sought to stop the deposition of a party's attorney but lost a Rule 37 motion. *See Gabet v. Amazon.com Inc.*, 2024 WL 1624337, at *2-*3 (S.D. Ind. Feb. 7, 2024). Likewise, courts in this Circuit routinely order depositions take place at the deponent's expense where there is discovery misconduct and non-compliance. *See Travelers Indem. Co. of Am. v. Harris*, 2021 WL 5396071, at *6 (S.D. Ill. Nov. 18, 2021) (ordering the defendant to incur the cost of his own depositions due to his noncompliance with the Court's discovery orders); *Spina v. Forest Preserve of Cook Cnty*, 2001 WL 893842, at *3 (N.D. Ill. Aug. 7, 2001) (granting plaintiff leave to re-depose several witnesses at defendant's expense due to the late production of documents); *Wauchop v. Domino's Pizza*, 143 F.R.D. 199, 205-06 (N.D. Ind. 1992) (ordering defendants to bear the costs of depositions, including of third party subpoena respondents due to

21

defendant's discovery misconduct).

Thus, this Court should not only grant the request for another deposition of Jason Covert; it should award GM its fees and costs for doing so.

## CONCLUSION

For the reasons stated above, this Court should compel the re-deposition of Jason Covert of Taft and award GM its fees and costs associated with the re-deposition and with bringing this motion.

Dated: September 8, 2025

Respectfully Submitted,

**HONIGMAN LLP**

By: */s/* Mahja D. Zeon

Mahja D. Zeon (32206-53)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7000
mzeon@honigman.com

Dennis J. Abdelnour (*pro hac vice application to be filed*)
David J. Roulo (*pro hac vice application to be filed*)
321 N. Clark St., Ste. 500
Chicago, IL 60654
(312) 701-9348
dabdelnour@honigman.com
droulo@honigman.com

*Attorneys for GM Global Technology Operations, LLC, General Motors, LLC and General Motors Company, Inc.*

23

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on September 8, 2025, that I caused a copy of the foregoing to be served on the individuals by email:

Jason Covert
Taft Stettinius & Hollister LLP
200 Massachusetts Ave NW Suite 500
Washington, DC 20001
jcovert@taftlaw.com

Cari Sheehan
Taft Stettinius & Hollister LLP
1 Indiana Sq # 3500
Indianapolis, IN 46204
csheehan@taftlaw.com

Gerald E. McGlynn III
Andrew M. Grove
Kristopher K. Hulliberger
Joseph W. Barber
Howard & Howard Attorneys PLLC
450 West Fourth Street
Royal Oak, Michigan 48067
jg@h2law.com
gem3@h2law.com
kkh@h2law.com
jwb@h2law.com

*/s/ Mahja D. Zeon*